# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DONNA WHEELER, | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 4:20-CV-00603 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| PLANO ARBOR HILLS LLC, d/b/a/ | § | |
| ARBOR HILLS MEMORY CARE, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plano Arbor Hills LLC's ("Arbor Hills") Opposed Motion to Compel Arbitration. (Dkt. #7). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

### BACKGROUND

This lawsuit arises from an employment relationship between Donna Wheeler ("Wheeler") and Arbor Hills. Wheeler worked for Arbor Hills at their facility providing care for residents who have Alzheimer's, dementia, and other forms of memory loss. While working there, Wheeler alleges a resident sexually assaulted her. After reporting the incident, Wheeler alleges her supervisors brushed off her allegation and took no action, and over the next several days similar instances of alleged sexual assault took place. Wheeler ultimately sought to report the incidences to the CEO of Arbor Hills' parent entity, but before she could make the report, she was suspended on February 13, 2019, without pay for "inappropriate consensual behavior" with the male resident. (Dkt. #5 ¶ 13). Wheeler alleges Arbor Hills suspended her for the sole purpose of preventing her from reporting the sexual assaults.

On March 12, 2019, Wheeler started back on active duty, but Arbor Hills placed her on night shifts. The alleged sexual assaults continued, and Wheeler reported the incidences as well as voicing complaints that nothing was being done to remedy it. Then Arbor Hills terminated her on April 12, 2019. After her termination, Wheeler filed a "Charge of Discrimination" on August 2, 2019, with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC"). On May 23, 2020, the TWC issued its Notice of Right to File Civil Action, and Wheeler filed suit in the 429th Judicial District Court, Collin County, Texas, on July 13, 2020. Arbor Hills filed its Notice of Removal on August 7, 2020, and on August 26, 2020, the EEOC issued its Notice of Right to Sue. Wheeler filed an Amended Complaint on September 8, 2020, and Arbor Hills filed this Motion to Compel Arbitration on September 25, 2020, claiming there was a binding arbitration agreement that covered the dispute.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012).

If the court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d

at 348. In the second step, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## ANALYSIS

Neither party disputes that Texas law is applicable in this case. "Under Texas law, an arbitration agreement, 'like other contracts,' must be supported by consideration." *Nelson v. Watch House Intern., L.L.C.,* 815 F.3d 190, 193 (5th Cir. 2016) (citing *Lizalde v. Vista Quality Markets,* 746 F.3d 222, 225 (5th Cir. 2014) (quoting *Mendivil v. Zanios Foods, Inc.,* 357 S.W.3d

827, 831 (Tex.App.–El Paso 2012)). "Under Texas law, an arbitration clause is illusory if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (citing *In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex.2010)). "Put differently, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset." *Id.*

The crux of the issue is whether Arbor Hills has the unilateral power to make changes to its arbitration policy that have retroactive effect, "meaning changes to the policy that would strip the right of arbitration from an employee who has already attempted to invoke it." *Id*. See also *Torres v. S.G.E. Mgmt., LLC,* 397 F. App'x 63, 68 (5th Cir. 2010) (unpublished) (summarizing several Texas and Fifth Circuit cases as "suggest[ing] that the lack of a notice window before any elimination of the [arbitration] clause becomes effective *and the ability to amend the agreement retroactively so as to avoid any promise to arbitrate* are factors indicating that the agreement may be illusory" (emphasis added)).

This is not to say, however, "that if a party retains any ability to terminate the agreement, the agreement is illusory." *Lizalde,* 746 F.3d at 226. In *Halliburton,* the seminal Texas case on this issue, an employee argued that an arbitration agreement was illusory because it purported to grant an employer the unilateral right to terminate or modify an arbitration agreement. *See* 80 S.W.3d at 569–70. In concluding that the arbitration agreement was not illusory, the Texas Supreme Court relied upon two key provisions—the agreement provided that "no amendment shall apply to a Dispute of which . . . [employer] had actual notice on the date of amendment" and that "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id.* at 569–70. Because of these two

5

provisions, the Texas Supreme Court held that the employer could not "avoid its promise to arbitrate by amending or terminating [the arbitration agreement] altogether." *Carey,* 669 F.3d at 206 (quoting *Halliburton,* 80 S.W.3d at 570); *see also In re 24R, Inc.,* 324 S.W.3d 564, 567 (Tex. 2010) (explaining that the *Halliburton* court "held that because the [arbitration agreement] contained a 'savings clause'—including a ten-day notice provision and a provision that any amendments would only apply prospectively—that prevented the employer from avoiding its promise, the arbitration agreement was not illusory" (citing *Halliburton,* 80 S.W.3d at 570)).

The Fifth Circuit has articulated a three-prong test to determine whether a *Halliburton*-type savings clause sufficiently restrains an employer's unilateral right to terminate its obligation to arbitrate. *See Lizalde,* 746 F.3d at 226. "[R]etaining termination power does not make an agreement illusory so long as that power (1) extends only to prospective claims, (2) applies equally to both the employer's and employee's claims, and (3) so long as advance notice to the employee is required before termination is effective." *Id.* (citing *Halliburton,* 80 S.W.3d at 569–70).

Here, Arbor Hills argues there is no language in the "Employee Information Guide" ("Guide") that allows it to unilaterally modify or terminate the obligation to arbitrate. (Dkt. #11 at p. 3). Arbor Hills provides its employees with the Guide, which contains information relating to how to properly perform the job as well as an arbitration agreement with signature blocks for the arbitration agreement and an acknowledgement of receipt. The language from the arbitration agreement indicates Arbor Hills can amend the Guide—including the arbitration provision. The language in relevant part states "[w]hile we fully intend to continue the policies and services described in this Employee Information Guide, we reserve the right to discontinue or revise them at any time[,]" (Dkt. #7-2 at p.51) and "I understand and agree that, upon reasonable notice to employees, Arbor Hills may amend or revise this Guide at any time." (Dkt. #7-2 at p. 52). The

language of the acknowledgement gives Arbor Hills the power to "amend or revise" the Guide in which the arbitration provision is located.

In the Guide there is no *Halliburton* type savings clause that limits Arbor Hills' ability to make retroactive modifications to the arbitration provision. In *Morrison*, the Fifth Circuit addressed a similar issue as the one presented here. Applying Texas law in that case, the Fifth Circuit refused to enforce the arbitration agreement that was capable of being retroactively modified. *Morrison v. Amway Corp.*, 517 F.3d 248, 257 (5th Cir. 2008). *Morrison* involved a dispute arising from a distributorship agreement, which required all distributors to comply with certain "Rules of Conduct" as they were "amended and published from time to time in official Amway literature." *Id.* at 253 (internal quotation marks omitted). An arbitration provision was contained within the Rules of Conduct. *Id.* at 257. The Fifth Circuit concluded there was "nothing in any of the relevant documents which preclude[d] . . . eliminating the entire arbitration program or its applicability to certain claims or disputes so that . . . mandatory arbitration would no longer be available even as to disputes which had arisen and of which Amway had notice prior to publication [of the change]." *Id.* In analyzing *Morrison*, the Fifth Circuit in *Carey* noted "[b]ecause Amway was able to amend its policy and thus renege on its promise to arbitrate even in the context of disputes already underway, we held that its agreement to arbitrate was illusory." 669 F.3d at 206.

Additionally, the Fifth Circuit has interpreted silence as to the possible retroactive application of amendments to the arbitration policy to allow amendments to apply retroactively. *See Carey*, 669 F.3d at 206-07. In *Carey*, Carey argued the arbitration clause in the handbook was illusory because it allowed "24 Hour Fitness to unilaterally avoid its promise to arbitrate by modifying the Handbook. The Acknowledgment [gave] 24 Hour Fitness the 'right to revise, delete, and add to the employee handbook' in which the arbitration provision is located." *Id.* at 206. The

7

Fifth Circuit noted that "[a]s in *Morrison*, there was no '*Halliburton* type savings clause' in the in the Acknowledgment that limits 24 Hour Fitness's ability to make retroactive modifications to the arbitration provision." *Id.*

There is nothing in the relevant documents that prevent amendments to the arbitration clause that would eliminate the entire arbitration clause or its applicability to certain claims or disputes. Consequently, the agreement's silence is interpreted to not limit the retroactive application of amendments, thus making the agreement illusory and unenforceable in light of the absence of a *Halliburton* savings clause and failing the first prong of the three-prong test from *Lizalde*. The Court therefore needs not reach Wheeler's other two objections regarding notice and public policy.

## CONCLUSION

It is therefore **ORDERED** Arbor Hills' Opposed Motion to Compel Arbitration (Dkt. #7) is hereby **DENIED.**

**SIGNED this 18th day of November, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE